UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

M & S SIGNS, LLC,

        Plaintiff,                      Case No. 13-14328

v                                          Honorable Thomas L. Ludington

AU SABLE, TOWNSHIP OF,

        Defendant.

_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL DISMISSAL OF PLAINTIFF'S COMPLAINT**

Plaintiff M & S Signs filed suit against Defendant Charter Township of Au Sable because Au Sable did not grant its application to erect a billboard. In its complaint, M & S Signs asserts four counts, although the Court can only identify three causes of action: (1) violation of equal protection; (2) violation of procedural due process; and (3) violation of free speech.

Au Sable has moved to dismiss the procedural due process and free speech claims, contending that M & S Signs does not state claims upon which relief may be granted.[1] Au Sables's motion to dismiss (ECF No. 4) should be granted as to M & S Signs' procedural due process claims and First Amendment claims. Because M & S Signs has not asserted a protected liberty interest, it has not stated a procedural due process claim upon which relief may be granted. Nor has M & S Signs alleged a First Amendment claim because the zoning regulations are content-neutral, narrowly tailored to advance significant government interests, and leave open alternative channels of communication.

---

[1] Defendant Au Sable's motion does not seek dismissal of M & S Signs' equal protection claims. ECF No. 4 at 6 ("Plaintiff's claim under the Equal Protection Clause of the Fourteenth Amendment is legally cognizable and presently unripe for dispositive analysis.").

# I

The facts are taken in the light most favorable to M & S Signs. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). M & S Signs is a business that erects billboards to be used for the dissemination of both commercial and noncommercial speech. Compl. ¶ 5. Between April 2011 and August 2012, M & S Signs submitted three applications for a permit to erect a billboard in Oscoda, Michigan. The first application, submitted on April 30, 2011, was neither formally granted nor denied. The second application, submitted on June 6, 2011, was denied on June 16, 2011. The third application was denied on August 28, 2012. M & S Signs claims that it completed the permit applications in accordance with Au Sable's Sign Ordinance. *Id*.

All of the applications were denied pursuant to the terms of the Au Sable Sign Ordinance, which limits the placement of billboards to areas zoned for industrial use. M & S Signs states that Au Sable denied its application to erect a billboard in a commercial zone, but granted a permit for a different billboard to be erected in a commercial zone. Compl. ¶ 11. M & S Signs does not, however, identify the recipient of the billboard permit nor any other facts related to the allegation.

The Sign Ordinance creates a comprehensive scheme for regulating billboards and other signs. *Id*. ¶ 6. The Sign Ordinance contains several regulations related to size, location, design features, setbacks, construction, and content. *Id*., Ex. A at 3-4. Pursuant to the Sign Ordinance, billboards are only authorized in the industrial district. *Id*. at § 22.08 ("Billboards may be erected only in I-1 Industrial District").

The Sign Ordinance also requires a person to seek prior approval from the Zoning Administrator before posting signs. *Id*. ¶ 11. The Sign Ordinance directs the Zoning

Administrator to issue a permit if the application conforms to the requirements set forth in the Sign Ordinance:

> It shall be the duty of the Zoning Administrator, upon the filing of an application for an erection permit, to examine the plans and specifications and other data and the premises upon which it is proposed to erect the sign or other advertising structure, and if it shall appear that the proposed structure is in compliance with all requirements of the Township, he shall then issue the erection permit.

*Id.* Ex. A at § 22.10

## II

This Court may dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The pleader need not have provided "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, (quoting *Twombly*, 550 U.S. at 570).

## III

Au Sable first asserts that M & S Signs has not sufficiently stated a claim for procedural due process. In its complaint, M & S Signs asserts that the Sign Ordinance is constitutionally invalid because it fails to circumscribe the time in which government officials must grant or deny

a sign permit. Au Sable, on the other hand, contends that its procedures for granting or denying a sign permit are constitutionally sufficient and accord with due process.

The Fourteenth Amendment to the United States Constitution prohibits a state actor from "depriv[ing] any person of life, liberty, or property, without due process of law," and a plaintiff may bring a § 1983 suit for violation of procedural due process. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). "To establish a procedural due process claim pursuant to § 1983, plaintiffs must establish three elements: (1) that they have a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, (2) that they were deprived of this protected interest within the meaning of the Due Process clause, and (3) that the state did not afford them adequate procedural rights prior to depriving them of their protected interest." *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999). Accordingly, the Court must first determine whether M & S Signs has shown that its claim involves a protected property interest before determining whether any deprivation of the protected property interest was afforded constitutionally required due process. *See Mator v. City of Ecorse*, 301 F. App'x 476, 479 (6th Cir. 2008).

M & S Signs has not alleged a procedural due process claim because it has not alleged that it had a protected property interest in receiving the sign permit. "Property interests are not created by the Fourteenth Amendment, rather they are created and defined by independent sources, such as state law." *Hamilton v. Myers*, 281 F.3d 520, 529 (6th Cir. 2002). The Michigan courts have repeatedly stated that when a "permit has been applied for but has not been issued, 'vested rights' are not acquired even though substantial sums have been expended by the applicant." *Schubiner v. West Bloomfield Township*, 351 N.W.2d 214, 219 (Mich. Ct. App. 1984) (citing *Franchise Realty Interstate Corp. v. Detroit*, 118 N.W.2d 258 (Mich. 1962)); *see also*

*H.D.V.-Greektown, LLC v. City of Detroit*, 2010 WL 3515783, at *10 (E.D. Mich. Sept. 8, 2010). M & S Signs did not acquire a "vested right" when it applied for the sign permit, and therefore it did not have a protected property interest. M & S Signs cannot state a claim upon which relief may be granted for a procedural due process violation.

## IV

Au Sable next argues that M & S Signs is unable to assert a First Amendment claim because the Sign Ordinance is a "reasonable time-place-and manner restriction on expression . . . ." Mot. Dismiss 9.

M & S Signs asserts that the "restriction of billboards to industrial districts is also involved as a preferences for commercial over non-commercial speech." [sic throughout] Compl. ¶ 19. It further asserts that this restriction "constitute[s] an unreasonable, overbroad, and unduly burdensome restriction of the freedom of citizens and property holders in the Township to speak freely." Compl. ¶ 24.

In *Metromedia Inc. v. City of San Diego*, the Supreme Court evaluated restrictions on billboards for both noncommercial and commercial speech, noting that regulating billboards often implicates both types of speech. 453 U.S. 490 (1981). Because billboards are large, immobile, and generally permanent structures, governments have legitimate interests in regulating the noncommunicative aspects of billboards. *Id.* For the government's regulation to come within the protection of the First Amendment, the regulation must : (1) be content-neutral, (2) serve a significant government interest, (3) be narrowly tailored to serve that government interest and (4) leave open ample alternative channels of communication. *Jobe v. City of Cattlesburg*, 409 F.3d 261, 267 (6th Cir. 2001).

As to the first factor, the principle inquiry is whether the government has adopted the regulation because of a disagreement with the message it conveys. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). "The government's purpose is the controlling consideration. A regulation that serves purposes unrelated to the content of expression is deemed neutral even if it has an incidental effect on some speakers or messages but not others." *Id.* Generally, regulations on the height and size of a billboard are not a restriction on the basis of content. *Prime Media, Inc. v. City of Brentwood, Tenn.*, 398 F.3d 814, 819 (6th Cir. 2005).

Here, M & S Signs concedes that Au Sable's Sign Ordinance is content-neutral. ECF No. 8 at 6. The Sign Ordinance prohibits only one type of content: obscene material. *See* Section 22.03(5). The Sign Ordinance does not contain any other restrictions on the content of expression; most of the regulations address the permissible size and material restrictions. Au Sable's Sign Ordinance is therefore content-neutral.

As to the second factor, the inquiry focuses on whether the government regulation served a significant government interest. M & S Signs concedes that the Sign Ordinance serves legitimate public interests. The Sign Ordinance identifies several objectives for its regulation of signs: (1) "to protect the scenic integrity of the natural environment and the accompanying viewsheds," (2) prevent traffic safety hazards, (3) avoid visual clutter and blight, (4) prevent confusion for vehicle drivers, and (5) discourage the encroachment of signage into residential neighborhoods, thereby preserving their residential character. Section 22.01. These five objectives illustrate that the Sign Ordinance serves significant government interests.

The third factor addresses whether the regulation is narrowly tailored to serve the legitimate government interest. "The requirement for narrowly tailoring is satisfied 'so long as the . . . regulation promotes a substantial government interest that would be achieved less

effectively absent the regulation.'" *Ward*, 491 U.S. at 799 (quoting *United States v. Albertini*, 472 U.S. 675, 689 (1985)). The regulation need not be the least restrictive or the least intrusive means of regulation. *City of Brentwood*, 398 F.3d at 819.

Here, Au Sable's Sign Ordinance satisfies the narrowly tailored requirement. The Sign Ordinance attempts to combat visual blight and prevent traffic hazards, and restricting billboards is an effective and sufficiently justified means to accomplish those objectives. *See Metromedia*, 453 U.S. at 508 ("if the city has a sufficient basis for believing that billboards are traffic hazards and are unattractive, then obviously the most direct and perhaps the only effective approach to solving the problem they create is to prohibit them."); *City of Brentwood*, 398 F.3d at 821 (upholding the ordinance on the basis that billboards are a visual blight and impact traffic safety); *Wheeler v. Comm'r of Highways*, 822 F.2d 586, 595 (6th Cir. 1987) (upholding billboard restrictions on the basis of the recreational value of public travel and preservation of natural beauty along interstate highways). The Sign Ordinance regulates signs to advance substantial government interests—preventing traffic hazard and combatting visual blight—and the Sign Ordinance is narrowly tailored to advance these interests.

Finally, the fourth factor addresses whether the regulation leaves open alternative channels of communication. When, as here, the regulation does not completely prohibit billboards, the regulation leaves open the alternative channels of communication. *See Randy Disselkoen Properties, LLC v. Charter Tp. of Cascade*, 2008 WL 114775, at *7 (W.D. Mich. Jan. 9, 2008). M & S Signs may still apply to erect billboards in industrial areas, which is permitted by the Sign Ordinance. Although M & S Signs would prefer to erect billboards near the main highway in Au Sable Township, the Sign Ordinance is not required to permit billboards in high-traffic areas. Restrictions regulating the erection of billboards near interstates or highways are

permissible because they leave open reasonable alternative channels of communication. *Wheeler v. Comm'r of Highways, Com. Of Ky.*, 822 F.2d 586, 596 (6th Cir. 1987) (citing *City of Renton*, 106 S.Ct. 925 (ordinance limiting adult theaters left reasonable alternative avenues of communication because ordinance left five percent of the city open for use as adult theaters). Although billboards may not be permitted near the main highway, Au Sable permits billboards in industrial areas thereby leaving open reasonable alternative channels of communication.

Au Sable's Sign Ordinance does not violate the First Amendment. The Sign Ordinance is content-neutral, it uses narrowly tailored means to advance significant government interests, and leaves open alternative channels of communication. M & S Signs cannot state a claim upon which relief may be granted for a First Amendment violation.

**V**

Plaintiff M & S Signs has not stated a claim for which relief may be granted under the Fourteenth Amendment's Due Process Clause or under the First Amendment. Those claims will be dismissed, and M & S Signs' claim under the Fourteenth Amendment's Equal Protection Clause will proceed.

Accordingly, it is **ORDERED** that Defendant Au Sable's Motion for Partial Dismissal of Plaintiff's Complaint (ECF No. 4) is **GRANTED.**

It is further **ORDERED** that Plaintiff M & S Signs' procedural due process claim is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that Plaintiff M & S Signs' First Amendment claims are **DISMISSED WITH PREJUDICE**.

            s/Thomas L. Ludington
            THOMAS L. LUDINGTON
            United States District Judge

Dated: January 10, 2014

- 9 -

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 10, 2014.

s/Tracy A. Jacobs
TRACY A. JACOBS